**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Michael James O'DRISCOLL,
Defendant-Appellant.**

**Colorado Criminal Defense Bar,
Amicus Curiae.**

**No. 84–1795.**

United States Court of Appeals,
Tenth Circuit.

May 7, 1985.

Rehearing Denied June 4, 1985.

Robert N. Miller, U.S. Atty., Denver, Colo. (Richard T. Spriggs, Asst. U.S. Atty., Denver, Colo., with him on brief), for plaintiff-appellee.

Isaac Howard Kaiser of Berenbaum & Weinshienk, Denver, Colo., for defendant-appellant.

John M. Richilano, Denver, Colo., on brief for amicus curiae.

Before BARRETT and SETH, Circuit Judges, and SEAY,[*] District Judge.

BARRETT, Circuit Judge.

The sole issue presented in this appeal is whether the sentence imposed by the trial court upon appellant O'Driscoll, for kidnapping, following conviction by a jury, of three hundered years in prison, with eligibility of parole following service of ninety-nine years, is outside the applicable statutory limits and thus illegal and an abuse of the trial court's discretion. 586 F.Supp. 1486 (1984). O'Driscoll entered a guilty plea to a charge of armed robbery prior to his trial on the kidnapping charge. A review of the facts relative to O'Driscoll's commission of the crimes of armed robbery and kidnapping will aid in placing the issue presented on appeal in focus.

### Facts of Case

The evidence in this trial record discloses that on November 12, 1982, O'Driscoll bought a nine millimeter Smith & Wesson gun from the Mile Hi Pawnshop in Denver, Colorado. He used a false driver's license for identification. On December 16, 1982, he bought a Smith & Wesson model 29 .44 magnum at Foothills Shooting Center in Lakewood. He again used a false driver's license for identification. On January 20, 1983, O'Driscoll attempted to pawn the Smith and Wesson .44 magnum at the Lakewood Gem and Trading Post. The owner, Irwin Kass, informed O'Driscoll that he did not have a license to pawn goods; he recommended another shop. Within an hour, O'Driscoll returned to Mr. Kass's store, where Mr. Kass was then alone. O'Driscoll drew the gun, told Mr. Kass that it was a stick-up and ordered Mr. Kass to the floor. Mr. Kass complied. O'Driscoll then beat Mr. Kass on the head with the revolver until he was rendered unconscious. O'Driscoll stole Mr. Kass's wallet and some $400 from the store. Mr. Kass was hospitalized for a week and unable to work for more than three months. His injuries required more than 100 stitches in his scalp. In addition, he suffered two broken fingers, three cracked teeth, and his left ear was half torn off. Mr. Kass positively identified O'Driscoll as the man who had robbed and beaten him.

Karen Tietgens, who was O'Driscoll's girlfriend, testified that just before O'Driscoll assaulted Mr. Kass and robbed his store, she and O'Driscoll had attempted unsuccessfully to sell the yellow van he was driving in an effort to raise money. They then drove to Mr. Kass's store, where O'Driscoll entered carrying his gun and a newspaper. O'Driscoll returned to the van with the gun wrapped in the newspaper, covered with blood.

After the robbery, O'Driscoll and Karen Tietgens drove to the JCRS Shopping Center in Lakewood. O'Driscoll drove to a parking space next to that of Kent Leslie Martin. O'Driscoll ordered Mr. Martin to move over and he ordered Tietgens to get in Mr. Martin's car. O'Driscoll drove Mr. Martin's car to their motel where he paid the bill with the robbery money. O'Driscoll and Tietgens then departed for Kansas with Mr. Martin as a hostage. Throughout the kidnapping, O'Driscoll held Mr. Martin at gunpoint. Near Salina, Kansas, O'Driscoll dropped Karen Tietgens off at the Red

[*] The Honorable Frank H. Seay, Chief Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

Coach Inn truck stop at an interchange off I–135. O'Driscoll then drove Mr. Martin some three miles west and two miles south to a wooded area. Karen Tietgens testified that O'Driscoll told her he shot Mr. Martin and that he did so for her sake so that Mr. Martin could never identify them. Mr. Martin died of ten gunshot wounds. One wound in Mr. Martin's chest was inflicted when O'Driscoll pressed the gun against the flesh and pulled the trigger. Mr. Martin had several grazing gunshot wounds on his left hand, incurred from his attempts to shield his body with his hands while being shot.

Following the killing of Mr. Martin, O'Driscoll drove Karen Tietgens to Ohio, where they parted company temporarily. O'Driscoll went on to Springfield, Massachusetts, where he met Christie Blake, another girlfriend, on January 30, 1983. O'Driscoll picked up Ms. Blake in Mr. Martin's car, and he told her not to leave her fingerprints in the car because it was a dead man's car. The following day, O'Driscoll and Christie Blake robbed the People's Savings Bank in Holyoke, Massachusetts.

O'Driscoll then left Springfield and Ms. Blake, and drove to Groton, Connecticut, where he abandoned Mr. Martin's car in a parking lot. When the Connecticut police subsequently searched the car, they found a box of license plates from different states in the trunk. The police removed the rear view mirror of the car and examined it for fingerprints. The mirror contained the print of O'Driscoll's right ring finger.

O'Driscoll next paid a man to drive him to New York, where, after a brief reconciliation with Karen Tietgens, he continued cross-country, ending up in Puyallup, Washington, where he was arrested in the company of a Patty Case. When arrested, O'Driscoll was carrying a nine millimeter automatic weapon, which had been sold by Mile Hi Pawnshop to O'Driscoll in November of 1982. It matched the shell casings and slugs taken from Mr. Martin's body and the scene of the murder in Kansas. A subsequent search of Ms. Case's trailer residence, where O'Driscoll had been living, revealed numerous other weapons, including a Smith & Wesson Model 29 .44 magnum, which had been sold by Foothills Shooting Center to O'Driscoll in December of 1982.

O'Driscoll testified that he arranged with a friend named Jay, who he met at a bar but whose last name he could not remember, to borrow some money and to let Jay drive his yellow van from Las Vegas, Nevada, to Ohio. O'Driscoll stated that he had left both the nine millimeter and the .44 magnum in the back of the van because he had to fly from Las Vegas to San Diego and could not take the guns on the plane. He stated that the arrangement was for Jay to drive Tietgens to Ohio, and then proceed on with O'Driscoll to Massachusetts to rob a bank. O'Driscoll said that he flew from San Diego to Cleveland on January 24 or 25, 1983, and met Jay at the Cleveland airport, where Jay told him that "he had some problems and he took this guy's car ... and somewhere in Kansas him and Karen disposed of him." (Vol. V, pp. 545, 546). O'Driscoll also testified that he used Kent Martin's car to drive from Lorain, Ohio, to Springfield, Massachusetts, and that if he had known that either the nine millimeter or the .44 magnum had been used to murder a man, he would not have held onto them.

On cross-examination, O'Driscoll acknowledged that: he had pled guilty and was convicted in Massachusetts federal court of kidnapping a 68-year-old woman after a bank robbery on November 10, 1982; he had no explanation as to why Jay would have used O'Driscoll's favorite gun to kill Mr. Martin; and the reason why he had left Denver on December 21, 1982, was because he had held up the Western Federal Savings and Loan Association bank there the day before.

O'Driscoll was charged with kidnapping and armed bank robbery. He pled guilty to the armed bank robbery charge, and was sentenced to twenty-five years imprisonment. His trial before a jury on the instant kidnapping charge began on March 26, 1984, and on April 2, 1984, he was

unanimously found guilty. On May 24, 1984, O'Driscoll was sentenced to serve three hundred years in prison, and to become eligible for parole after serving ninety-nine years.

### Other Facts Before The Court at Sentencing

With regard to the guilty plea entered by O'Driscoll to the charge of armed bank robbery of the Western Federal Savings and Loan Association of Denver on December 20, 1982, while accompanied by one Christina Blake who was also carrying a hand gun, the trial court noted, *inter alia:* O'Driscoll was very aggressive; he pushed people around; he brandished his gun in making numerous demands while using loud profanities; he destroyed bank property; he fired a shot inside the bank and while leaving, he fired a shot through the window· and threatened to kill all of the bank personnel. He robbed the bank of $3,384. The trial court found that the worst part was the fear that O'Driscoll instilled in all of the bank employees.

O'Driscoll, born August 6, 1953, at Springfield, Massachusetts, was the product of a broken marriage which resulted in his commitment to a training school at an early age; he married at an early age, became a father of two children and was divorced. He has never given any financial support to his children. In the seventh grade, O'Driscoll became a habitual truant. In April, 1978, he received a certificate of accomplishment in welding and was immediately hired by a manufacturing concern; however, between April, 1978, to date of sentencing, O'Driscoll had held down four jobs for a total working period of eighteen months. After his divorce, O'Driscoll became involved with many paramours, many of whom joined him in thefts and robberies. O'Driscoll admitted to commission of seven bank robberies. He further admitted to heavy consumption of alcohol, use of cocaine and many other drugs. During the presentence investigation process, O'Driscoll attempted to strike a "bargain" with the trial court: O'Driscoll would provide

the location of some $98,000 he had "salted away" from his bank robberies if the court would order that he receive conjugal visits from his woman friends. Since age 17 to date of sentencing in this case, O'Driscoll was convicted of at least eight misdemeanor offenses, six serious traffic violations and three or four felonies. Even so, O'Driscoll had served only a total of twenty days in jail under these sentences. The court noted that O'Driscoll was convicted in California state courts for burglary, theft and false impersonation and in each instance he was placed on probation. The court reviewed specific cases involving O'Driscoll's criminal conduct in specific instances which established O'Driscoll's mean, cruel, malicious character. At the time of sentencing, O'Driscoll had 71 charges in seven different courts pending against him involving charges of assault on a federal officer, escape, murder, assault with dangerous weapons, armed robbery, malicious injury, assault with intent to rape, threat to murder and eight charges of kidnapping.

### Trial Court Basis for Sentence Imposed

Based upon the evidence in the case at bar and the presentence record aforesaid, the trial court detailed the viciousness of O'Driscoll's conduct, attitude and propensities, *inter alia:*

It is difficult, indeed impossible, to describe accurately the physical and emotional suffering and loss which this defendant has caused to so many, yet he demonstrates not even a scintilla of remorse. Instead, he is preoccupied with the immediate gratification of his own needs. He appears uncommonly successful in manipulating a number of women and exploiting them in ways that not only injure their lives, but also create significant problems with the security measures necessary to control and monitor him.

The evidence is clear, convincing and beyond serious disputation that the defendant has a chronic sociopathic personality ... the defendant fails to demonstrate even the existence of a conscience.

Results of psychometric testing show that he is chronically maladjusted, immature and self-indulgent, manipulative of others, obnoxious, hostile and aggressive. He is incapable of respecting authority, demonstrates difficulty in interpersonal relations and refuses to accept responsibility for problems. He is hedonistic and over-uses alcohol and drugs. He is excessively impulsive and acts out against others without considering the consequences. His capacity for rage has already been more than adequately demonstrated. In his wake he has left nothing but carnage and devastation.

Any leniency in sentencing in this case would depreciate the seriousness of the defendant's crimes and would promote a clearly understandable disrespect for the law and the judicial system. Further, I consider it mandatory to impress upon all who learn of this defendant's sordid criminality what certain and terrible penalties would be imposed upon them for similar conduct. This defendant has demonstrated himself to be such a danger to the public that I believe it is incumbent upon me to do all that I can to see that he is never again let loose to wreak violence and devastation upon the innocent, the weak and the aged.

... It is devastating to say, but this defendant's record establishes that it is simply too late to indulge in quixotic notions of rehabilitation and redemption.

The maximum penalty for armed bank robbery is imprisonment for not more than twenty-five years and a fine of not more than $10,000 or both such fine and imprisonment. The defendant has already been sentenced to twenty-five years imprisonment for a similar offense and I do not perceive any reason to impose a lesser sentence in this case.

The penalty for the crime of kidnapping is any term of years or for life. Upon first impression, it would seem reasonable to impose a sentence of life imprisonment in this case. Upon reflection, however, I have decided to impose a term of years. My decision is based upon the provisions of law set forth by Congress in the United States Code. Title 18 of the United States Code, Section 4205 provides that whenever a prisoner is serving more than one year in prison, he or she becomes eligible for release on parole after serving one-third of the sentence or sentences imposed by the courts. If a life sentence is imposed, or if the total of sentences imposed exceeds thirty years, the the defendant becomes eligible for release on parole after serving ten years.

I do not know what some parole authority in the future might be disposed to do with this defendant, but even the possibility of this defendant obtaining release in ten or so years reduces the seriousness of his crimes to the point of triviality. Accordingly, I have found authorization for an appropriate sentence in subparagraph (b) of Section 4205 which reads as follows:

> Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and *the best interest of the public* require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine.

(Emphasis added.) It is my clear intent to sentence this defendant in accordance with this statute. I have reviewed the legislative history, which is scant, and find that the sentence I shall announce is not in conflict with congressional purpose.

I specifically find the ends of justice and the best interest of the public require that this defendant be sentenced to

imprisonment for a term exceeding one year and that I should designate in the sentence a minimum term at the expiration of which the defendant shall become eligible for parole which is less than one-third of the maximum. It should be clear to all who review this sentence that my intent is to announce that this defendant will not be released from prison at any time insofar as it is within the power of the judicial branch of the government to prevent such a release. In the unlikely event that this defendant ever becomes deserving of release in full appreciation of the wrong he has done and awareness of the danger to others he presents, the laws of the United States provide for action by the executive branch of government. In other words, his release, if ever, should be a matter of executive clemency and not legal entitlement.

Accordingly, I pronounce the following sentence:

Michael James O'Driscoll, on the charge of armed bank robbery in violation of 18 1U.S.C. [18 U.S.C.] § 2113 (a)(d), 2., I sentence you to the custody of the Attorney General of the United States for a term of twenty-five (25) years. This sentence shall be consecutive to the two concurrent 25 year sentences imposed December 29, 1983 by the United States District Court for the District of Massachusetts in Case No. 82–305–01. It is my specific recommendation that this sentence never run concurrently with any sentence imposed by any state court.

In case number 84–CR–14–1 charging you with the crime of kidnapping, I sentence you to the custody of the Attorney General of the United States of America for a term of three-hundred years. I specifically order that this sentence shall run consecutive to and not concurrent with the sentence of 25 years imposed in case number 83–CR–63–1 charging you with armed bank robbery. Further, in accordance with 18 U.S.C. § 4205 (b)(1), I specifically order that you shall become eligible for release on parole only on completion of serving ninety-nine years which is one year less than one-third of the maximum sentence of three-hundred years. (Footnotes omitted.)

R., Vol. I, pp. 70–72.

### Discussion and Decision

On appeal O'Driscoll contends that the trial court erred in that (1) O'Driscoll's sentence is outside of applicable statutory limits and therefore illegal, and (2) the imposition of O'Driscoll's sentence was an abuse of the trial court's discretion.

We are cognizant that the unbridled power of the sentencing courts to be arbitrary and discriminatory has been the subject of much discussion. *See United States v. DiFrancesno*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980). It is our view, based on the record which we have detailed, that the sentence imposed by the trial court upon O'Driscoll is not arbitrary, discriminatory, unlawful or cruel and unusual punishment. We hold that (1) the sentence imposed is within the range of the sentence for the crime of kidnapping, (2) the trial court was fully, adequately and reliably informed by presentence investigations and reports, and (3) the trial court did not infringe upon the power or authority of the Parole Commission.

### I.

O'Driscoll contends that the sentence imposed is outside of applicable statutory limits and therefore illegal. Relying on the rule that the fixing of penalties for crimes is a congressional function, *Hayes v. United States*, 238 F.2d 318, 322 (10th Cir. 1956), *cert. denied*, 353 U.S. 983, 77 S.Ct. 1280, 1 L.Ed.2d 1142 (1957), and that proper apportionment of punishment is pecularily a question of legislative, not judicial, policy, *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958), O'Driscoll argues:

(a) The penalty for kidnapping set forth in 18 U.S.C. § 1201 "imprisonment for any term of years or for life" does not permit, based on general principles of statutory

construction and certain "minimal legislative history," (Brief of Appellant, p. 3), a sentence in excess of "life imprisonment." Appellant argues that if the Congress intended to permit a three hundred year sentence, the language allowing the imposition of a sentence of life imprisonment would be superfluous. Such is not the case, argues O'Driscoll, because Congress took steps to add the life imprisonment language to the predecessor statute to § 1201, 18 U.S.C. § 408a, in 1948, and the Reviser's Note states that the amendment was added to remove all doubt as to whether a court could impose a life sentence. Thus, argues O'Driscoll, the most sensible construction of § 1201 is that "life imprisonment" is meant to be the maximum permissible sentence under the statute.

The Government counters with the argument that O'Driscoll ignores the legislative intent behind the predecessor to 18 U.S.C. § 4205(b)(1), which was 18 U.S.C. § 4208. The predecessor statute contained the identical language as § 4205(b)(1) and its legislative history states that the section "would permit the court, at its discretion, *to share with the executive branch the responsibility for determining how long a prisoner should actually serve.*" S.Rep. No. 2013, 85th Cong., 2d Sess. 2, *reprinted in* 1958 U.S.Code Cong. & Ad.News 3891, 3892. (Emphasis added.) (Brief of Appellee, p. 9.) Further, argues the Government, the interpretation urged by O'Driscoll of 18 U.S.C. § 1201 renders superfluous the provision allowing sentences "for *any* term of years" in that had Congress intended life imprisonment to be the maximum sentence, it would have so specified. (Brief of Appellee, p. 10.) We agree.

The trial court recognized the distinction between a sentence of life imprisonment and one for a term of three hundred years. A prisoner serving a life sentence becomes eligible for parole no later than ten years after his incarceration. 18 U.S.C. § 4205(a).[1] A prisoner sentenced to a term of three hundred years with eligibility for parole specifically fixed following service of a minimum term of ninety-nine years based on the trial court's finding, as here, that such sentence is required to satisfy the "ends of justice and best interest of the public" is not eligible for parole under 18 U.S.C. § 4205(b)(1)[2] until he has served ninety-nine years, a period one year less than one third of the full sentence imposed. Such a sentence, the Congress determined, is permissible if the "ends of justice and the best interests of the public" require. The Congress did clearly delineate the distinction between § 4205(b)(1) and § 4205(b)(2). The former permits the court to determine any eligibility date up to one-third of the maximum sentence imposed by the court, while the latter permits the court to impose only the maximum sentence, in which event the Board of Parole (now Parole Commission) would be authorized to release a prisoner at any time. *See* S.Rep. No. 2013, 85th Cong., 2d Sess. 2, *reprinted in* 1958 U.S.Code Cong. & Ad. News, 3891, 3901–02. It is our view that the Congress, in enacting § 4205(b)(1) specially allowed the trial courts to bypass the Parole Commission if the "ends of justice and the best interests of the public" so require. We hold that the evidence before the court at the O'Driscoll sentencing was such that the "ends of justice and the best interests of the public" fully support the

**1.** Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.

**2.** Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine.

district court's imposition of the 300 year sentence.

■ In assessing the punishment commensurate with the crime for which the defendant was convicted, the trial court may consider a broad range of information even though it was not contained in the presentence report. *Roberts v. United States*, 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) (sentencing judge may consider defendant's attitude toward society and the prospects for rehabilitation); *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

■ The sentencing judge originally determines the extent of a criminal defendant's confinement within the permissible range authorized by the Congress; the Parole Commission may order conditional release any time after the prisoner has served one-third of his fixed term. *United States v. Grayson*, 438 U.S. 41, 98 S.Ct. 2610, 57 L.Ed.2d 582 (1978); *United States v. Schell*, 692 F.2d 672 (10th Cir.1982).

■ Court review of a sentence generally ends once it is determined that a sentence is within statutory limits. *Rummell v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *Dorsznski v. United States*, 418 U.S. 424, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974); *Schick v. Reed*, 419 U.S. 256, 95 S.Ct. 379, 42 L.Ed.2d 430 (1974); *United States v. Tucker*, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *Gore v. United States*, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). A federal prisoner sentenced to a definite term exceeding one year is eligible for parole after serving one-third of the sentence. 18 U.S.C. § 4205(a)(1976). Alternatively, the court may set a maximum term which permits parole eligibility at any point up to one-third of the term. 18 U.S.C. § 4205(b)(1). Thus, under this latter section, district courts may enter sentences which set parole eligibility at any point of time during the first one-third of the sentence imposed. *United States v. Addonizio*, 442 U.S. 178, 189 n. 15, 99 S.Ct. 2235, 2242 n. 15, 60 L.Ed.2d 805 (1979); *United States v. Pry*, 625 F.2d 689 (5th Cir.1980); *Wilden v. Fields*, 510 F.Supp. 1295, 1306–1307 (W.D.Wis.1981) (judges may, pursuant to § 4205(b), designate a minimum sentence to be served, up to one-third of the term imposed, before a prisoner is eligible for parole; nothing in the legislative history indicates that prisoners serving § 4205(b)(2) sentences should be treated differently from prisoners sentenced under any other statutory provision); *United States v. Whitley*, 473 F.Supp. 23, 24 (E.D. Mich.1979) (§ 4205(b) allows the district court judge to impose a sentence which by-passes the one-third or ten-year provision of § 4205(a)).

Fundamental rules of statutory construction require that the court presume legislative enactments to be reasonable and logical and that legislative intent be ascertained from the language of the statute whenever possible. The legislature will not be presumed to intend futile results. *Jackson v. Kelly*, 557 F.2d 735, 740 (10th Cir. 1977); *Whiteis v. Yamaha Intern. Corp.*, 531 F.2d 968 (10th Cir.1976), *cert. denied*, 429 U.S. 858, 97 S.Ct. 157, 50 L.Ed.2d 135 (1976). It is fundamental that legislative acts dealing with related matters must be considered *in pari materia* and the meaning of each such statute be correlated so as to give intelligent meaning to both whenever possible. In attempting to give full force and effect to a statute, the court must read it in the light of its purpose; when Congress uses words in a statute without defining them and those words have a judicially settled meaning, it is presumed that Congress intended that meaning. *Hardy Salt Company v. Southern Pacific Transp. Co.*, 501 F.2d 1156, 1168 (10th Cir.1974), *cert. denied*, 419 U.S. 1033, 95 S.Ct. 515, 42 L.Ed.2d 308 (1974).

■ When the term "or" is used, it is presumed to be used in the *disjunctive* sense unless the legislative intent is clearly contrary. *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir.1975); *United States v. Snider*, 502 F.2d 645, 655 (4th Cir.1974); Sutherland, Statutory Construction, 4th Ed., Vol. 1A, § 21.14; 82 C.J.S., Statutes, § 335;

73 Am.Jur.2d, Statutes, § 241; Anno., 118 A.L.R. 1367, 1375. And in penal statutes the word "or" is seldom used other than as a disjunctive and can never be interpreted as meaning the conjunctive "and" if the effect would be to increase the punishment; the word "or" indicates permissible alternative sentences. 21 Am.Jur.2d, Criminal Law, § 540, p. 897; *Smith v. City of Casper*, 419 P.2d 704 (Wyo.1966); *State v. Evans*, 245 P.2d 788 (Idaho 1952); *State v. Dickens*, 66 Ariz. 86, 183 P.2d 148 (1947); *Rasmussen v. Zundel*, 67 Utah 456, 248 P. 135 (1926); *Re McNeal*, 74 P. 1110 (Kan. 1904). Applying this standard, we hold that the trial court's imposition of the three hundred year sentence was permissible under 18 U.S.C. § 1201 which permitted the penalty range for the conviction of the crime of kidnapping of "imprisonment for *any* term of years *or* for life." (Emphasis added.)

It is argued that the above interpretation ignores 18 U.S.C. § 4206(d) which authorizes the Parole Commission to release a prisoner sentenced to more than 45 years, including a life term, when he has served 30 years, unless "there is reasonable probability that he will commit any Federal, State or local crime." (Brief of *Amicus Curiae*, p. 4.) The difficulty with this contention is that the trial court's sentence under 18 U.S.C. § 1201 and 18 U.S.C. § 4205(b)(1) does not interfere with the application of the Parole Commission's guidelines. It simply fixes the date that the parole mechanism shall become operative.

■ It is fundamental that a judgment must conform to the statutory provision and that a variation in the extent of the punishment imposed renders the judgment void. *Weems v. United States*, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). When there are two statutes addressing the same general subject matter (here sentencing under 18 U.S.C. § 1201 and 18 U.S.C. § 4205), one being special and one being general, the special act controls as effective, and all matters coming within the scope of the special act are governed by its provisions. *Preiser v. Rodriguez*, 411 U.S.

475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973); *Glover Const. Co. v. Andrus*, 591 F.2d 554, 561 (10th Cir.1979), *affd* 446 U.S. 608, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980); *Missouri K. & T. Ry. Co. v. Jackson*, 174 F.2d 297 (10th Cir.1949); Sutherland, Statutory Construction, 4th Ed., Vol. 2A, § 51.05. Here the special act is 18 U.S.C. § 1201 which delineates the range of penalty the trial court may impose on one convicted of kidnapping. We have heretofore held that the 300 year sentence imposed by the trial court in the case at bar is within the legislative range, i.e., "imprisonment for any term of years." Reading this special act in *pari materia* with the general act relating to parole eligibility, i.e., 18 U.S.C. § 4205, we hold that the three hundred year sentence is not void in light of the trial court's specific finding that "the ends of justice and the best interest of the public" require said sentence which, in accord with § 4205(b)(1), permits O'Driscoll to become eligible for release on parole on completion of service of a term of imprisonment of ninety-nine years, which is one year less than the one-third maximum sentence of three-hundred years. Statutes are to be construed in a manner as to effectuate the intent and interest of the enacting body. In *Glover, supra,* we quoted Sutherland, Statutory Construction, 4th Ed., Vol. 2A, § 51.05 as follows:

> General and special acts may be in pari materia. If so, they should be construed together. When one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling....

591 F.2d at 561.

## II.

■ O'Driscoll contends that the trial court's imposition of a three hundred year sentence, with no possibility of parole for

ninety-nine of those years, was an abuse of discretion and must be stricken as excessive under the prohibition against cruel and unusual punishment in the Eighth Amendment to the United States Constitution. We disagree.

O'Driscoll relies upon the practice "during the past seventy years" of releasing prisoners on parole before the end of their sentence as an integral part of the penological system recognized in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). (Brief of Appellant, p. 6.) Predicated thereon, O'Driscoll argues that the trial court, contrary to the purpose of 18 U.S.C. § 4205(b) used it, in conjunction with 18 U.S.C. § 1201, "to increase, rather than decrease, the amount of time that O'Driscoll would be imprisoned." (Brief of Appellant, p. 7.) This action, he contends, effectively defeated the purpose of the statutory scheme and constitutes cruel and unusual punishment. We have already held that the sentence imposed was within statutory limits and therefore legal.

 With respect to the charge that the O'Driscoll sentence, as a practical matter, amounts to life imprisonment without the possibility of parole and therefore constitutes cruel and unusual punishment, we observe that *Schick v. Reed*, 419 U.S. 256, 267, 95 S.Ct. 379, 385, 42 L.Ed.2d 430 (1974) rejected this contention. *See also, Government of Virgin Islands v. Gereau*, 592 F.2d 192 (3rd Cir.1979). *See also*, Anno., 33 ALR 3d 335. It is fundamental that punishment should be tailored to the particular criminal and not necessarily to the severity of the crime. *Williams v. New York*, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Certainly, the sentence imposed in the case at bar was fine-tuned to the particular criminal, O'Driscoll. Rehabilitation is not the only constitutionally permissible goal of incarceration; retribution is equally permissible. *Atiyeh v. Capps*, 449 U.S. 1312, 101 S.Ct. 829, 66 L.Ed.2d 785 (1981) (Per Justice Rehnquist as Circuit Justice).

 The Eighth Amendment's prohibition against imposition of cruel and un-usual punishment requires that the sentence cannot be disproportionate to the severity of the crime or involve unnecessary infliction of pain. *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983); *Coker v. Georgia*, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977); *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Again, the guiding rule is that the fixing of penalties for crimes is a legislative function, and the determination of what constitutes adequate punishment is left to the trial court's discretion; and if the sentence is within statutory limits, the appellate court will not regard it as cruel and unusual or excessive. *United States v. Le Mon*, 622 F.2d 1022 (10th Cir.1980); *United States v. Baer*, 575 F.2d 1295 (10th Cir.1978); *Adam v. United States*, 266 F.2d 819 (10th Cir.1959). The imposition of a severe sentence, within legal limits, is not error. Insofar as standard sentencing is concerned, not every offense in a like category calls for identical punishment. *Williams v. State of Okl.*, 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959), rehearing denied, 359 U.S. 956, 79 S.Ct. 737, 3 L.Ed.2d 763 (1959).

A sentence of imprisonment for a very long term of years, the effect of which is to deny a prisoner eligibility for parole until a time beyond his life expectancy, does not violate the Eighth Amendment prohibition of imposition of cruel and unusual punishment. Anno., 33 A.L.R.3d 335, 310, pp. 369–371. In *Bailey v. United States*, 74 F.2d 451, 452 (10th Cir.1934), Bailey was convicted of conspiracy to transport a kidnapped person in violation of 18 U.S.C. § 408 (predecessor to 18 U.S.C. § 1201), which provided that, upon conviction, the defendant shall be imprisoned for a term of years as the court, in its discretion, shall determine. This court held that the imposition of the sentence "during the term of his natural life" was permissible and definite and tantamount "... [t]o a sentence for a definite possible life span of the person sentenced." 74 F.2d at 452. And in *United States v. Ragen*, 146 F.2d 349 (7th Cir. 1945), *cert. denied*, 325 U.S. 865, 65 S.Ct.

1194, 89 L.Ed. 1985 (1945), the court, in a habeas corpus challenge to a 199-year sentence fixed by the jury as sentence for murder, held that the sentence was authorized by the Illinois statute which provided, "punishment of death or imprisonment in the penitentiary for his natural life or for a term of not less than fourteen years," and that the sentence did not constitute cruel and unusual punishment.

In this case, given the basis in fact for the trial court's sentence, we hold that the three hundred year term of imprisonment was completely justified. The appellant O'Driscoll is one of the worst type of offenders. We recognize that the law has long recognized that retribution is not the dominant, primary objective of the criminal justice system. Rather, reformation and rehabilitation are primary, hopeful goals. However, a severe penalty is required where vindication of the law and the common good of society are at stake because of the callous, vicious propensities of the defendant and his lack of any semblance of good character and respect for human life. We fully agree with the trial court's conclusion that a criminal defendant such as O'Driscoll must be prevented from ever again inflicting on the public his heineous, cruel conduct. The punishment imposed by the trial court is proportioned to the offense committed and the vile criminal record of O'Driscoll. This appellant is a threat and danger to the peace and safety of the community. The punishment imposed by the trial court in this case was properly tailored to the criminal.

WE AFFIRM.