**UNITED STATES of America, Appellee,**

v.

**John CASTONGUAY,
Defendant, Appellant.**

**No. 87–1555.**

United States Court of Appeals,
First Circuit.

Heard Feb. 2, 1988.

Decided April 4, 1988.

Marshall D. Stein, by Appointment of the Court, with whom Cherwin & Glickman, Boston, Mass., was on brief, for defendant, appellant.

Cerise Lim–Epstein, Asst. U.S. Atty., with whom Frank L. McNamara, Jr., U.S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN and BREYER, Circuit Judges, and PETTINE,* Senior

---

* Of the District of Rhode Island, sitting by designation.

District Judge.

COFFIN, Circuit Judge.

After being convicted of an especially heinous crime (the kidnapping, battery, and rape of a nine-year old girl) the defendant, John Castonguay, was found by the trial judge to remain dangerous and without remorse. The judge, after colloquy concerning his authority to do so, imposed a maximum sentence of 75 years imprisonment, with a minimum term to be served of 25 years. The defendant's appeal challenges the court's authority to establish such a high minimum term to be served before any consideration of parole eligibility hearing can be held.

The issue revolves around two sections of a statute that took their present shape in 1958. The first is 18 U.S.C. § 4205(a), which provides:

> Whenever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law.

The predecessor to this section, enacted in 1948 and standing alone until 1958, contained virtually identical language without the last clause. 18 U.S.C. § 4202 (1948), *reprinted in* 1948 U.S.Code Cong. & Admin.News A551.[1]

In 1958, following considerable study by governmental and private professional bodies, what is now 18 U.S.C. § 4205(b) was enacted. It provides:

> Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term exceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court, or (2) the court may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may be released on parole at such time as the Commission may determine.

Appellant contends that section 4205(a) requires automatic parole eligibility once a prisoner has served the lesser of either one-third of the sentence imposed or ten years, and that section 4205(b) does not in any way modify that requirement. The government argues that the language, "otherwise provided by law," in section 4205(a) includes reference to section 4205(b)(1). The government then interprets section 4205(b)(1) to give a sentencing judge authority, if the judge thinks that the ends of justice and the public interest so require, to set a higher minimum threshold period of imprisonment by simply fixing a long enough maximum sentence so that one-third of it will exceed section 4205(a)'s ceiling of ten years.

Consideration of this issue seems to have marched first in one direction, and then in the other. In the 1970's, several courts reflected on the matter in passing and assumed that 18 U.S.C. § 4205(b)(1) was an "early parole" eligibility provision. For example, in *Jones v. United States*, 419 F.2d 593, 595 (8th Cir.1969), Justice (then Judge) Blackmun referred to the predecessor of this section as authorizing "the sentencing court to set an earlier time for parole eligibility than would otherwise be the case under the one-third-of-the-term measure established by § 4202 [now § 4205(a)]." This thought was endorsed by the Ninth Circuit in *United States v. Price*, 474 F.2d 1223, 1228 (9th Cir.1973). Judge Hufstedler, writing for the court, adopted the analysis in *Jones* and referred to the prede-

---

1. As originally enacted this section provided:
   § 4202. Prisoners eligible
   A Federal Prisoner, other than a juvenile delinquent, wherever confined and serving a definite term or terms of over one year, whose record shows that he has observed the rules of the institution in which he is confined, may be released on parole after serving one-third of such term or terms or after serving fifteen years of a life sentence.

cessor of § 4205(b)(1) as an "early parole eligibility provision[ ]." *Id.* Somewhat later, in *United States v. Busic,* 592 F.2d 13, 26 (2d Cir.1978), Judge Lumbard wrote:

> Moreover, a reading of § 4205 as a whole indicates that Congress meant to vest the sentencing court with authority under § 4205(b) to designate that a person subject to a life sentence be eligible for parole earlier than the ten year maximum prescribed by § 4205(a).

Subsequently, however, in 1985, the Tenth Circuit, in *United States v. O'Driscoll,* 761 F.2d 589, 596 (10th Cir.1985), without considering any of these statements or the legislative history in any depth, held that section 4205(b)(1) permits a court, if satisfied that "the ends of justice and best interest of the public" require it, to set a minimum time of 99 years and maximum term of 300 years. Relying on *O'Driscoll,* both the Eighth Circuit in *Rothgeb v. United States,* 789 F.2d 647, 652 (8th Cir.1986), and the Ninth Circuit in *United States v. Gwaltney,* 790 F.2d 1378, 1388–89 (9th Cir. 1986), held that the plain language of section 4205(b)(1) gave an option to a sentencing judge to exceed the minimum ceiling prescribed in section 4205(a). The court, in *Rothgeb,* did not address the legislative history, *see* 789 F.2d at 652–53, and the *Gwaltney* court found it "inconclusive at best," 790 F.2d at 1388. The opinions in both cases were by a split panel, neither majority opinion having referred to *Jones* or *Price.*

In the meantime, the Court of Appeals for the Seventh Circuit had observed in *United States v. [Clayton] Fountain,* 768 F.2d 790, 799 (7th Cir.1985), that "the apparent purpose [of section 4205(b)(1) ] is to allow release on parole before the earliest date allowed by subsection (a); we have found no case where it was used to postpone the date of eligibility for parole." Shortly thereafter, however, to avoid a con-troversy with the position recently taken by the Tenth Circuit in *O'Driscoll,* the Seventh Circuit, in effect, withdrew its interpretation of section 4025(b)(1) on the grounds that such an interpretation was unnecessary for the result reached. *United States v. [Clayton] Fountain,* 777 F.2d 345, 346 (7th Cir.1985) (amending 768 F.2d 790 (7th Cir.1985)). Most recently, subsequent to the decision below, in a decision based upon an exhaustive analysis of the legislative history, the Seventh Circuit, in an opinion written by Judge Easterbrook, held "that § 4205(b) does not authorize judges to postpone eligibility for parole beyond the time specified by § 4205(a)." *United States v. [Scott] Fountain,* 840 F.2d 509, 523, (7th Cir.1988).[2] It is obvious that the moving tide of events will soon render this issue one for historic interest only, with the advent of the new Sentencing Reform Act, Pub.L. No. 98–473, § 235, 98 Stat. 1834 (codified in scattered sections of Titles 18 and 28, U.S.C.) (effective Nov. 1, 1987). We nevertheless cannot avoid decision.

We begin with the cardinal principle that a statute should be construed in its total context so as to render its various parts internally consistent if such can be accomplished without undue strain. We can do no better by way of setting the stage than to repeat what we said in *Dickenson v. Petit,* 692 F.2d 177, 180 (1st Cir.1982):

> [A] clever and literal reading of a statute may go directly counter to everything Congress intended. As Judge Learned Hand explained in *Helvering v. Gregory,* 69 F.2d 809, 810–11 (2d Cir. 1934), *aff'd,* 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935), a statute may not apply "even though the facts answer the dictionary definitions of each term used in the statutory definition. . . . [For] the meaning of a sentence may be more than that of the separate words, as a melody is

---

**2.** Although the Seventh Circuit arrives at this conclusion through a slightly different analysis of the legislative history than ours, we find ourselves in complete agreement with its opinion on this issue.

On numerous occasions we deem it necessary to refer critically to conduct of counsel that we consider sub-standard. In this case, we think it appropriate, if not necessary, to note that counsel for the government observed the highest standards of her office in calling this opinion, adverse to the government's position, to our attention.

more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear, and which all collectively create."

Following this guideline, we see no intrinsic incompatibility between interpreting § 4205(a) as setting the minimum ceiling for parole eligibility at one-third of a term or ten years, whichever is a lesser period, and interpreting section 4205(b)(1) as authorizing a judge to designate a minimum term which could be less, but not more than that automatically set by section 4205(a). That is, the phrase in subsection (b)(1), one-third of the "maximum sentence imposed by the court," could be read as a shorthand mention of incorporating the complete thrust of subsection (a) as a ceiling, i.e., one-third of a term or terms or ten years of a life sentence or of a sentence over 30 years.

Admittedly, this is not the only reasonable interpretation of section 4205(b)(1). The interpretation contended by the government is also literally possible.[3] This very possibility of dual interpretations forces us to look at internal structure, policy, purpose of the legislation and legislative history.

To begin with structure, we note that the only exception to the automatic ceiling for parole eligibility set by subsection (a) is that created by its last clause, "except to the extent otherwise provided by law." The government would have us believe that this refers to the immediately following subsection (b). Not only is the legislative history inconsistent with this interpretation,[4] but it also seems inconsistent with the structure of section 4205 as a whole. For instance, 18 U.S.C. § 4205(h) reads, "Nothing in this chapter shall be construed to provide that any prisoner shall be eligible for release on parole if such prisoner is ineligible for such release under other provisions of law." We cannot believe that section 4205(h) could be read as referring to section 4205(b)(1). By the same token, we do not believe that the last clause of subsection (a) could similarly be interpreted.

When we subject the government's interpretation of sections 4205(a) and 4205(b) to the test of policy and common sense, we recognize what even the *Rothgeb* court described as "anomalous" situations. A person committed of a lesser crime, e.g., second degree murder, could, under the government's reading of subsection (b)(1), be subjected to a sentence two or three or more times greater than one convicted of a greater crime, e.g., murder. 789 F.2d at 652. Such an interpretation of subsection (b)(1) would provide such an open-ended, standardless way of avoiding subsection (a) and its predecessors that we doubt the Congress would have intended, without any discussion or clear signals, to make such a substantial change in its approach to parole eligibility. *See United States v. [Scott] Fountain*, at 518–19, 522–23. Such signals as we have found in the legislative history, *see infra*, refer to giving courts the power to advance parole eligibility dates; there is

---

3. We would, however, point out that the government blithely ignores punctuation when it argues that subsection (b)(1) authorizes the court to increase a minimum term of parole eligibility beyond that allowed by subsection (a) when it determines that "the ends of justice and best interests of the public require." A strict interpretation of subsection (b)(1) would limit the effect of invoking "the ends of justice and best interests of the public" to merely determining that the defendant should be sentenced to "imprisonment for a term exceeding one year."

4. In the legislative history accompanying the 1958 legislation, it seems to us clear that this phrase, as well as the same language in 18 U.S.C. § 4205(h), referred to laws requiring mandatory penalties for certain offenses. In S.Rep. No. 2013, 85th Cong., 2d Sess. 1958, *re-*

*printed in* 1958 U.S.Code Cong. & Admin.News 3891, the purpose of the legislation is described in the following language: "The legislation does not apply to any offense for which there is provided a mandatory penalty." This statement is further elaborated by the following:

As set forth under "Purpose" above, the proposed legislation provides that it shall not apply to any offense for which there is provided a mandatory penalty. This is to assure that the mandatory penalties provided by statute for special categories of crime, such as armed robbery of a post office and violations of the Narcotic Control Act of 1926, as amended by the Narcotics Control Act of 1956, shall not be affected in any way by the provisions of the bill.

*Id.* at 3892.

absolutely no indication of any intent to give courts carte blanche to extend eligibility dates without limitation.

When we analyze the legislative history of section 4205(b), we do not find any "smoking gun" in the form of a direct statement that the new legislation was not intended to authorize judges to extend the period of parole eligibility, but we do find a stream of consistent statements conveying a general focus on (1) allowing flexibility to set earlier dates of parole eligibility; (2) eliminating sentence disparities; and (3) encouraging mutual participation by both courts and the parole board to achieve these objectives. This history convinces us of the congressional purpose underlying the statute in question. *See generally* S.Rep. No. 2031, 85th Cong. (1958) and Conference Rep. No. 2579, 85th Cong. (1958), *reprinted in* 1958 U.S.Code Cong. and Admin.News pp. 3891–3906.

Here, in sequence, are the relevant excerpts:

1. Letter to Chairman Eastland of the Senate Judiciary Committee from Assistant Director Ellis of the Administrative Office of the United States Courts, endorsing the legislation which, in part, would "authorize the court at the time of sentence to fix an earlier date of parole eligibility for prisoners...." *Id.* at 3894.

2. Description by the United States Judicial Conference of House Joint Resolution 425 as

a bill to authorize the court in sentencing a prisoner to fix an earlier date when the prisoner shall become eligible for parole or to except such prisoner from the statutory limitation as to eligibility for parole when in the judgment of the court it might reasonably be expected to facilitate the rehabilitation of the prisoner.

*Id.* at 3896.

3. Endorsement, by the Administrative Office of Judicial Conference, of language to be substituted for what would become section 4205(b)(1) as follows: "which time may be less than, but shall not be more than, the one-third limitation now provided in [§ 4205(a)]." *Id.* at 3897.

4. Letter to Senator Eastland from the Chairman of the American Bar Association Section on Criminal Law, summarizing proposed legislation in the following language: "These measures are the creation of institutes and councils for the study of sentences, the amendment to permit Federal courts to shorten the parole eligibility requirement in apprpriate cases...." *Id.* at 3899.

5. Report of Judicial Conference Subcommittee to Consider the Problem of Disparities in Sentences describing its chairman's recommendation to approve "House Joint Resolution 425, to authorize the court, in sentencing a prisoner, to fix an earlier date when the prisoner shall become eligible for parole...." *Id.* at 3900.

6. The Subcommittee further commented with regard to House Joint Resolution 425: "the court may designate in the sentence imposed a time when the prisoner may become eligible for parole, *which time may be less than, but shall not be more than, one-third limitation now provided in section 4202 of this title* [now § 4205(a)]...." *Id.* at 3902 (emphasis original).

7. Letter from Lawrence E. Walsh, Deputy Attorney General, to Senator Eastland:

The present statute, section 4202 [now § 4205(a)] which provides that a prisoner is not eligible for parole consideration until he has served one-third of the sentence imposed, is purely arbitrary and does not take into consideration the response made by an individual prisoner to the rehabilitation programs carried on in our Federal institutions. Much bitterness is engendered in many prisoners who have otherwise admirably responded to rehabilitation programs by the knowledge that they must be incarcerated for a purely arbitrary period as is now provided by the Parole Act.

*Id.* at 3904–05.

In addition to these extracts from the legislative history relating to the "earlier parole" eligibility objective of the proposed legislation, it is pertinent to note that a substantial part of the legislation was to

**56**

reduce disparities in sentences. It was this objective that led to that part of the legislation authorizing the creation of institutions and joint counsel on sentencing. *Id.* at 3894. The Director of the Administrative Office of the United States Courts, expressing the views of the Judicial Conference of the United States, endorsed the legislation as "a major step toward finding a solution to the problem of disparity of sentences which has so plagued the administration of criminal justice." *Id.* at 3898–99. The formation of the Judicial Conference Subcommittee to Consider the Problem of Disparities in Sentences was, of course, a concrete recognition of the problem. That Subcommittee stated that House Joint Resolution No. 425 "as enacted will mitigate the problems of sentence disparities by permitting judges wider discretion in the formulation of sentences and a sharing of responsibility for determining the amount of time to be served." *Id.* at 3901. These comments prompt us to observe that, should section 4205(b)(1) have been thought to authorize judges to extend, without limitation, the minimum date for parole eligibility, there would have been little hope for the reduction of disparities. On the other hand, if the result of the legislation was to allow judges to impose an earlier initial date for parole eligibility, this would have allowed the parole board more room within which to implement the objective of reducing disparities.

By the same token, if section 4205(b)(1) were interpreted to confer on judges the power to delay the date of parole eligibility, it would defeat Congress's objective of promoting joint sharing of responsibility between judges and the parole board that is evident in the legislative history. *See, e.g.,* S.Rep. No. 2013, 85th Cong. (1958) *reprinted in* 1958 U.S.Code Cong. & Admin.News 3892 ("This [section] would permit the court, at its discretion, to share with the executive branch its responsibility for determining how long a prisoner should actually serve."). To the extent that a judge advances the minimum date of parole eligi-

bility, the judge makes it possible for the parole board to join in a decision; to the extent that a judge postpones that date, the parole board is commensurately prevented from participating in any parole decision.

We, therefore, conclude from our analysis of the language, the internal structure of the statute, the common sense implication of a contrary interpretation, the purpose of the legislature, and the consistent fabric of responsible statements found in the legislative history, that the court below exceeded its authority in setting as a minimum sentence, which must be served before parole eligibility could be considered, a term of 25 years.[5] *Accord United States v. [Scott] Fountain,* at 523.

*The sentence is vacated for further proceedings in accordance with this opinion.*

---

5. It may well be that the same considerations that motivated the district court will influence the Parole Board when it comes to consider parole eligibility, but under the system in place at the relevant time, it is the discretion of the latter that must be decisive.