**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tommy BERRYHILL,**
**Defendant–Appellant.**

No. 88–1699.

United States Court of Appeals,
Tenth Circuit.

July 20, 1989.

Rehearing Denied Aug. 31, 1989.

Paul G. Hess, Asst. U.S. Atty. (Roger Hilfiger, U.S. Atty. with him, on the brief), Muskogee, Okl., for plaintiff-appellee.

Stephen J. Greubel, Asst. Federal Public Defender, Tulsa, Okl., for defendant-appellant.

Before SEYMOUR, BARRETT and BRORBY, Circuit Judges.

## OPINION ON REHEARING

BARRETT, Senior Circuit Judge.

Upon consideration of the petition for rehearing of plaintiff-appellee United States of America requesting that the court revise its opinion with regard to our remand to the district court to correct its reliance on a repealed statute, the petition is granted. The United States argues that our remand in *United States v. Berryhill*, 872 F.2d 949 (10th Cir.1989), authored by Barrett, Senior Circuit Judge, was based upon a misconception of the repeal date of 18 U.S.C. § 4205(b)(1). We agree. In our order granting rehearing, we directed that that opinion be withdrawn.

Tommy Berryhill (Berryhill) appeals from a judgment and sentence entered after a jury trial and an order of the district court denying his motion for a new trial.

Berryhill was indicted and charged with violations of 18 U.S.C. § 1201, kidnapping, 18 U.S.C. § 924(c)(1), use of a firearm in the commission of a felony, and 18 U.S.C. § 2312, interstate transportation of a stolen motor vehicle relative to acts which occurred between July 7–11, 1987. Prior to trial, Berryhill moved for a change of venue due to frequent pre-trial prejudicial publicity and to suppress his identification based on prejudicially suggestive photographic lineups. Both motions were denied and the case proceeded to trial.

At the close of the first day of trial, one of the jurors related that he knew or thought he knew Mrs. Swearingen, the victim, or her husband. Another juror acknowledged that he remembered reading about the Swearingen kidnapping in a local newspaper. The court, in the presence of counsel and the defendant, conferred with the two jurors in chambers and subsequently excused the juror who had related that he knew or thought he knew the victim. The court's examination of the juror who had read about the kidnapping showed that there was no significant possibility that the juror would be prejudiced thereby. The court properly found that this juror was qualified. *See* Rule 24, Fed.R.Crim.P.

Following a four-day trial, the jury returned a guilty verdict as charged on all three counts. Thereafter, Berryhill moved for a new trial, alleging that the court erred in: denying his motion for change of venue; failing to conduct an in-depth voir dire of prospective jurors; and in denying his motion for a mistrial at the close of the first day of trial. The court denied this motion via a minute order. Berryhill's request for new counsel was similarly denied. Berryhill was sentenced to 300 years with eligibility for parole after a minimum term of 99 years on Count I, and sentenced to five years on each of Counts II and III, said sentences to run consecutively.

On appeal, Berryhill contends that: (1) we should reverse our *United States v. O'Driscoll*, 761 F.2d 589 (10th Cir.1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986); (2) the district court erred in failing to conduct adequate voir

dire; (3) the court erred in denying his motion for a mistrial; and (4) the court erred in failing to grant his motion to suppress in-court identification evidence of himself which was the fruit of out-of-court, overly suggestive and unfair photographic displays.

## I.

Berryhill argues that we should reverse our decision in *O'Driscoll* and correct the illegal sentence given him pursuant to that decision.

■ In *O'Driscoll*, we held that, inasmuch as 18 U.S.C. § 1201 provided the penalty for kidnapping to be "imprisonment for any term of years or life," a sentence for a term of 300 years with eligibility for parole after a minimum term of 99 years was legal under § 1201 and 18 U.S.C. § 4205(b)(1).[1] Berryhill argues that *O'Driscoll* was incorrect and that his sentence in reliance on *O'Driscoll* is illegal. Berryhill requests that we reverse our holding in *O'Driscoll* and order that his sentence be corrected by deleting therefrom the language requiring a minimum 99 years incarceration prior to parole consideration.

In response, the government argues that since the sentence was within § 1201, i.e., an "imprisonment for any term of years or for life," it was legal, and that a legal sentence is not cruel, excessive, or unusual punishment. The government also argues that *O'Driscoll* is the law of this circuit and that "[a] court of appeals panel may not disregard binding precedent absent an intervening Supreme Court or *en banc* circuit decision. *Flowers v. United States,* 764 F.2d 759 (11th Cir.1985). At present, the *O'Driscoll* case is the law of the Tenth Circuit and should be overruled only by concurrence of the court *en banc."* (Brief of Appellee at p. 4). We agree. *See Unit-*

*ed States v. Taylor,* 828 F.2d 630, 633 (10th Cir.1987) (a panel is not authorized to overrule a prior decision of a court of appeals); Fed.R.App.P. 35, 28 U.S.C.; 10th Cir.R. 35.

Berryhill was sentenced on April 22, 1988, and during sentencing, the court stated:

Tommy Berryhill it is adjudged that on Count 1 you are hereby committed to the custody of the Attorney General of the United States, or his authorized representative, for imprisonment for a term of three hundred years.

It is further ordered that under the provisions of Title 18, United States Code, Section 4205(b)(1), the Court is hereby designating that the defendant shall only become eligible for parole after a minimum term of 99 years incarceration.

(R., Vol. IV, p. 599).

■ A reviewing court is to grant substantial deference to the discretion of the trial court in sentencing criminals. *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009, 77 L.Ed.2d 637 (1983). Although no penalty is *per se* constitutional, *id.,* successful challenges to the proportionality of particular sentences, outside the context of capital punishment, have been exceedingly rare. *Rummel v. Estelle,* 445 U.S. 263, 268, 100 S.Ct. 1133, 1136, 63 L.Ed.2d 382 (1980). Thus, if a sentence is imposed within the prescribed statutory limits, the appellate court will generally not regard it as cruel and unusual. *United States v. Gourley,* 835 F.2d 249, 253 (10th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988). Berryhill's sentence of imprisonment for a term of three hundred years with eligibility for parole after a minimum term of 99 years incarceration was within the prescribed statutory limits of §§ 1201 and 4205(b)(1). Furthermore, an identical sentence was upheld in *O'Driscoll.* Inasmuch as *O'Driscoll* is the law of

1. § 4205(b), repealed effective November 1, 1987, provided in part:

Upon entering a judgment of conviction, the court having jurisdiction to impose sentence, when in its opinion the ends of justice and best interest of the public require that the defendant be sentenced to imprisonment for a term ex-

ceeding one year, may (1) designate in the sentence of imprisonment imposed a minimum term at the expiration of which the prisoner shall become eligible for parole, which term may be less than but shall not be more than one-third of the maximum sentence imposed by the court....

the Tenth Circuit, we decline to hold that Berryhill's sentence was illegal.

## II.

Berryhill contends that the court erred in failing to adequately voir dire prospective jurors.

Berryhill argues that the traditional method of eliciting information from potential jurors, and the method utilized in this case, i.e., a series of questions requiring a "yes" or "no" answer, gives rise to a perfunctory examination of prospective jurors which does not provide sufficient information to intelligently exercise peremptory challenges. Berryhill argues that it is essential to supplement the court's examination with "at least some attorney questioning—for the intelligent exercise of jury challenges." While acknowledging that his counsel did not request attorney-conducted voir dire, Berryhill nonetheless contends that he was forced to rely on the court's voir dire.

The government responds that the court did not err in its voir dire and that Berryhill's arguments in this regard are frivolous. The government cites to *United States v. Hall*, 536 F.2d 313, 324 (10th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976) for the rule that it is the practice in this circuit for the court to ask the voir dire questions; that conduct of voir dire is within the discretion of the district court; and that the court's exercise of that discretion will not be disturbed unless there is a clear showing of abuse. The government also argues that, inasmuch as defense counsel did not request attorney conducted voir dire during trial, Berryhill cannot raise this issue for the first time on appeal.

■ The conduct of voir dire is within the sound discretion of the trial judge, *United States v. Sutton*, 732 F.2d 1483, 1493 (10th Cir.1984), *cert. denied*, 469 U.S. 1157, 105 S.Ct. 903, 83 L.Ed.2d 919 (1985), and this discretion will not be disturbed absent a clear showing of abuse. *United States v. Lambinus*, 747 F.2d 592, 598 (10th Cir.1984), *cert. denied*, 471 U.S. 1067, 105 S.Ct. 2143, 85 L.Ed.2d 500 (1985). We

have carefully reviewed the trial court's voir dire. Nothing in the record before us indicates that the trial court was anything other than meticulous, conscientious and fair in its voir dire. The trial court's voir dire insured that the jurors were competent to serve and that they were impartial. *United States v. Hall, supra*, at 324.

Furthermore, following its voir dire, the trial court solicited the aid and suggestions of counsel. (R., Vol. II, pp. 30–31). Neither side expressed specific concern *vis a vis* the adequacy of the voir dire. *Id.* Under these circumstances, we shall not attribute error to the trial court's voir dire. *See United States v. Lawson*, 670 F.2d 923, 926 (10th Cir.1982).

## III.

■ Berryhill makes a brief one-half page argument that the trial court erred in failing to grant his motion for a mistrial when, after the first day of trial, it became apparent that the court's inadequate voir dire had led to the impaneling of two jurors who had not earlier disclosed their prior knowledge of the parties and the facts. Specifically, Berryhill contends:

> Mr. Berryhill was denied his right to intelligently exercise the peremptory challenges provided him. That denial resulted in the retention of a juror who had been exposed to earlier (possibly inaccurate) newspaper accounts of the abduction and rape of a local woman.
>
> When this fact became apparent, not only to the judge and attorneys, but to all the other jurors, a mistrial was the proper remedy.

(Principal Brief of Defendant/Appellant at page 35).

A ruling on a motion for a mistrial is within the sound discretion of the trial judge. *United States v. Behrens*, 689 F.2d 154, 162 (10th Cir.), *cert. denied*, 459 U.S. 1088, 103 S.Ct. 573, 74 L.Ed.2d 934 (1982). Moreover, the trial court's ruling will not be disturbed on appeal absent a clear abuse of discretion. *United States v. Gibbons*, 607 F.2d 1320, 1330 (10th Cir.1979).

As set forth, *supra,* at the close of the first day of trial, one of the jurors related for the first time that "I know this lady. I met her one time. I know someone in her family." (R., Vol. II, p. 142). A second juror then stated "Your Honor, I read about the case, or heard about it, but I didn't know what they were talking about until they brought up about the little boy." *Id.* The court, in the presence of the defendant and counsel, subsequently conferred with the two jurors in chambers. Thereafter, out of an abundance of caution, the court discharged the juror who had related that he knew or thought he knew the victim. The juror stated that he had met the victim briefly some eight or more years ago. *Id.* at 145–49. The court determined that the juror who had read about the kidnapping in a newspaper was qualified to serve. This juror stated that he recalled reading about a grandmother who had been kidnapped and taken out-of-state, but he could not recall any names or details. *Id.* at 156. The juror related that nothing he had read in the newspaper would influence him from being a fair and impartial juror. *Id.* at 157–58.

Thereafter, counsel for Berryhill moved for a mistrial:

> THE COURT: Okay. Let me hear what you have to say, Mr. Pyle, about both of them, actually.
>
> MR. PYLE: The case appears to be one of those occasional ones that all the things keep going wrong in it. And based upon the first juror's admission of knowing or believing he knows Mrs. Swearingen or her husband or whoever, I would move for a mistrial based upon the statement he made while in the juror box of having knowledge on it, and perhaps whatever influence it might have on the jury at that time.
>
> THE COURT: I don't think there was much said then, Dick, and I'll overrule that motion.
>
> \* \* \* \* \* \*
>
> MR. PYLE: [N]ow we have a jury in the box and I'm sitting here and having waived peremptory challenges with a man now who said he's read something

about it, and I didn't have a chance to inquire into that, and a man who says he knows the victim, or thinks he knows her, and doesn't know what he can do about that, and I don't have any chance to challenge him now. Based upon the fact I'm sitting here now after having waived that, with that not being disclosed by either of them at that point in time, I want to move for a mistrial.

(R., Vol. II at pp. 158, 161).

After the trial court denied the motion for mistrial, Berryhill personally related to the court, in chambers:

> THE DEFENDANT: Well, I ain't got nothing against that other guy sitting on the jury.
>
> THE COURT: Sir?
>
> THE DEFENDANT: I ain't got nothing against that other one sitting on the jury.
>
> THE COURT: The other gentleman who had read something in the paper or something?
>
> THE DEFENDANT: Yes. There's nothing wrong with that, I don't think, but the other guy, you know, what he said and everything. I don't—

(R., Vol. III at pp. 171–72).

After the court excused the first juror questioned, he announced that the alternate juror would serve in his place. *Id.* at 165. No objections to the qualifications of this juror were made. Berryhill, as previously observed, stated that he had no objection to continued service of the second juror. The trial court, with the approval of both defense counsel and the defendant, Berryhill, thereafter informed the jury that after juror Latimer had stated that he was acquainted with a witness, the court talked with him at length and determined that it was best that he not participate any further as a juror. *Id.* at 174–75.

The competency of a juror to sit is a matter within the wide discretion of the trial court and the trial judge's decision will not be interfered with except for an abuse of discretion. *United States v. Porth,* 426 F.2d 519 (10th Cir.), *cert. denied,* 400 U.S. 824, 91 S.Ct. 47, 27 L.Ed.2d 53 (1970). The

court did not err in denying Berryhill's motion for a mistrial.

## IV.

Berryhill contends that the trial court erred in failing to grant his motion to suppress the in-court identifications of him. Berryhill argues, citing *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), that it is proper for a court to suppress in-court identification evidence which is the fruit of out-of-court preaccusatory displays if such displays were overly suggestive and unfair. Berryhill argues that: reliability is pivotal in determining the admissibility of identification testimony; reliability was entirely absent here because neither witness had an opportunity to view him for more than a few moments and both were attending to employment duties when they saw him; it was only during the second, and suggestive, photographic lineup that he was identified; and, under the totality of the circumstances, the out-of-court identifications were unreliable, the result of unfair and overly suggestive lineup procedures.

In response, the government contends that: the photographic lineups were not suggestive; Berryhill was identified by three witnesses; each of the witnesses had previously given descriptions of a suspect which were similar to Berryhill's appearance; and, under the totality of the circumstances, the court properly denied Berryhill's motion to suppress. We agree.

■ "The standard of review on an appeal of the denial of a motion to suppress evidence is that the reviewing court must accept the trial court's findings of fact unless clearly erroneous and must consider the evidence in the light most favorable to the government." *United States v. Soto–Ornelas,* 863 F.2d 1487, 1490 (10th Cir. 1988). *See also United States v. Skowronski,* 827 F.2d 1414, 1417 (10th Cir.1987) (trial judge's determinations in suppression hearing which rest upon credibility and reasonable inferences will not be set aside unless clearly erroneous). A photographic identification procedure is not unconstitutionally suggestive, if, when viewed "in

light of the totality of surrounding circumstances," it does not give rise to a "photographic identification procedure ... so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. at pp. 383–84, 88 S.Ct. at pp. 970–71. Furthermore, even when we do accept a defendant's contention that a photographic procedure was unnecessarily suggestive, "the degree of suggestiveness ... [can be] ... easily outweighed by sufficient evidence of reliability." *Baca v. Sullivan,* 821 F.2d 1480, 1482 (10th Cir.1987). *See also Johnston v. Makowski,* 823 F.2d 387, 391 (10th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 750, 98 L.Ed.2d 763 (1988).

In the instant case, the trial court, mindful of *Simmons v. United States* and after a suppression hearing which included the testimony of the three witnesses who identified Berryhill, entered a detailed order finding:

The evidence established that three prospective witnesses had viewed photographic lineups on different occasions. Two of the prospective witnesses, Head and Singleton, each viewed two different photographic lineups on two different occasions. Plaintiff's Exhibits 1 and 2. In the first photo lineup, both Head and Singleton picked a picture of a man, other than the defendant, who they said most closely resembled the man they had seen. In the second photo lineup, which contained a more recent picture of the defendant, both picked the defendant's picture as the one which most closely resembled the man they had seen.

The witness Posey, viewing a different photo lineup, picked the defendant's picture as the man she had seen. Plaintiff's Exhibit 4. Witness Posey had previously compiled a composite drawing of the suspect, plaintiff's Exhibit 3. All three witnesses had seen the suspect only seven to ten days before the photo lineups, and all had ample opportunity to view the defendant at that time. All of the witnesses were shown the photo lineups separately at different times and places.

All the witnesses had previously given physical descriptions of the suspect, which were similar to the defendant's appearance.

\*   \*   \*   \*   \*   \*

The court finds that the photographic lineups were not suggestive or conducive to a mistaken identification. *Simmons v. United States,* 390 U.S. 377 [88 S.Ct. 967, 19 L.Ed.2d 1247] (1968). Considering the totality of the circumstances, the court finds that neither the evidence of the photographic lineups themselves nor any in-court identification of the defendant by these witnesses should be suppressed. *Allen v. Johnston,* 413 F.Supp. 1 (W.D.Okl.1975); *Neil v. Biggers,* 409 U.S. 188 [93 S.Ct. 375, 34 L.Ed.2d 401] (1972). Accordingly, the defendant's Motion to Suppress is denied.

(R., Vol. I, Tab 27, pp. 1–2).

Having carefully reviewed the suppression hearing transcript, we have found nothing supporting Berryhill's allegations that the photographic displays were impermissibly suggestive. We hold that the trial court did not err in denying Berryhill's motion to suppress all in-court identification of him by witnesses who had previously viewed photographic displays.

AFFIRMED.

SEYMOUR, Circuit Judge, concurring.

I fully agree with parts II, III, and IV of the majority opinion. I concur in part I only because I am bound by this court's prior opinion in *United States v. O'Driscoll,* 761 F.2d 589 (10th Cir.1985), *cert. denied* 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed. 2d 320 (1986), which can be overturned only by the court en banc. In my view, the better interpretation of 18 U.S.C. § 4205(b)(1) (repealed Nov. 1, 1987) is set out in *United States v. DiPasquale,* 859 F.2d 9 (3rd Cir.1988); *United States v. Castonguay,* 843 F.2d 51 (1st Cir.1988), and *United States v. Fountain,* 840 F.2d 509 (7th Cir.), *cert. denied* —— U.S. ——, 109 S.Ct. 533, 102 L.Ed.2d 564 (1988). *But see United States v. Berry,* 839 F.2d 1487 (11th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 863, 102 L.Ed.2d 987 (1989); *Ro-*

*thgeb v. United States,* 789 F.2d 647 (8th Cir.1986); *United States v. Gwaltney,* 790 F.2d 1378 (9th Cir.1986) *cert. denied* 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987).