**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Mark A. VARCA and Anthony Joseph
Varca, Defendants–Appellants.**

**No. 88–3942.**

United States Court of Appeals,
Fifth Circuit.

March 7, 1990.

Rehearing and Rehearing En Banc Denied
April 4, 1990.

Guy Rasco, Michael S. Pasano, Miami, Fla., Zuckerman, Spaeder, Taylor & Evans, for defendants-appellants.

Patty Merkamp Stemler, Atty., Crim. Div., Appellate Section, Washington, D.C., John Volz, U.S. Atty., Harold J. Gilbert, Jr., Asst. U.S. Atty., New Orleans, La., Frank J. Marine, Washington, D.C., for plaintiff-appellee.

Before POLITZ, KING and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Anthony J. Varca and his son Mark A. Varca, together with nine co-defendants, were indicted in September 1987 for conspiracy to import marihuana, attempted importation of marihuana, conspiracy to possess marihuana with intent to distribute, and possession of marihuana with intent to distribute. Their indictment was one of several arising out of an elaborate drug smuggling operation in the Caribbean coordinated by one Randy Fink, which collapsed

in August 1985 when agents seized over 25 tons of marihuana as it was being off-loaded onto a shrimp boat off the coast of Louisiana.

The cast of characters included Customs agents who suggested safe rendezvous points for the off-loading. The marihuana was transported in ships owned and manned by the Varcas. The Varcas denied knowledge of the conspiracy and claimed involvement in CIA intelligence gathering and Contra-aid operations in the Caribbean which had been infiltrated and diverted to drug smuggling by Fink and others. Fink, who sought to lighten his burden by a measure of cooperation with the authorities, testified against the Varcas.

The Varcas were jointly tried but were represented by separate counsel. They were convicted on all four counts and each was sentenced to four consecutive 13-year prison terms, with a minimum of 15 years imprisonment before eligibility for parole, and a $500,000 fine. They timely appealed.

### 1. *Ineffective assistance of counsel—conflicts of interest*

The first and most serious issue raised by the Varcas is their contention that they were denied the effective assistance of counsel because their retained counsel had disabling conflicts of interest. They contend that the trial court erred when it denied their motions to disqualify their attorneys, which they offered on the first day of the trial, without conducting a *Garcia* hearing.[1] Anthony Varca was represented by Arthur A. Lemann, III. Mark Varca was represented by John Wilson Reed.

Two bases of conflict are alleged. First, the Varcas assert that an attorney who had shared office space with Lemann had represented a defendant in one of the companion indictments who testified against them. Second, they assert that because Lemann and Robert Glass, Reed's law partner, concurrently represented two Customs agents named in one of the companion indictments, they refused to call those agents as witnesses for the Varcas and thus prejudiced their defense.

A proper analysis of this claim requires a chronicling of the relationship between the Varcas and these two attorneys. When arrested in 1987 the Varcas jointly retained James O'Connor. The government informed O'Connor and the court that O'Connor had represented two co-conspirators, Thomas Ault and Robert Dillard, who might be called as witnesses for the prosecution. On December 7, 1987 a federal magistrate conducted a *Garcia* hearing, the potential conflict and the dangers inherent in that conflict were explained to the Varcas and they were informed of their right to conflict-free counsel. Neither wished to waive that right. The magistrate disqualified O'Connor and directed the Varcas to retain separate counsel.

Four days later Lemann informed the court that he had been asked to serve as counsel for one of the Varcas. At this meeting O'Connor advised that John Lawrence, an attorney who previously had shared office space with Lemann, had represented Edward Misseck, a defendant in one of the related indictments. Another hearing was conducted in which the court questioned Lemann about his firm's former association with Lawrence. Lemann explained that Lawrence had been neither a partner nor an associate, that he had merely shared space for which he paid a portion of the office overhead. Fees were shared only when Lemann's firm referred a matter to Lawrence or when Lawrence referred a client to the firm. Lemann emphasized that although Lawrence had represented Misseck, he (Lemann) had not participated in, received fees from, or obtained confidential information regarding that representation. At most, Lemann informed the court, he had asked Lawrence to ask Misseck whether he knew anything about Keith Deerman, one of the indicted Customs agents whom Lemann represented. The trial court found no cause to disqualify Lemann.

About three months later Lemann and Reed jointly filed a motion asking to be relieved as counsel for the Varcas. They

---

1. *United States v. Garcia,* 517 F.2d 272 (5th Cir.1975).

filed under seal an affidavit detailing their reasons for this request. Because of the seal we are not free to discuss the specifics of the affidavit, but we deem it relevant and important to note that it dealt with the retainer fee and Lemann and Reed related details therein which indicated that the Varcas lacked confidence in and rejected their professional advice.

After reading the affidavit the district judge held a hearing in chambers with Lemann, Reed and the Varcas present. The court elicited the position of the Varcas in light of this development. Anthony Varca stated that he had "no problems" with Lemann, whom he had selected after reading the transcript of one of the related trials in which Lemann and Robert Glass had represented Keith Deerman and Francis Kinney, the two Customs agents. Anthony Varca opposed Lemann's withdrawal. Mark Varca opposed Reed's withdrawal. The court denied counsel's motion to withdraw.

Five months later and two days before the trial commenced, Mark Varca informed the court that he and his father had "a continuing battle" with counsel due to their concurrent representation of Deerman and Kinney.[2] Anthony Varca stated that the conflict had only become evident "in the last few days" and that every time they discussed issuing subpoenas to the agents they were "stonewalled" by counsel. They did not ask that counsel be disqualified. The court noted their objections.[3]

On the first day of trial, after the jury was sworn and jeopardy had attached the Varcas moved to disqualify Lemann and Reed, claiming that their counsel were afraid of "contradicting their Customs clients" and that they had "never disclosed [this] conflict." The Varcas requested an evidentiary hearing and a 90–day continuance to find new counsel and to prepare a defense. After hearing the Varcas' objections in full the trial judge offered them the option of continuing with their retained counsel or representing themselves, making it abundantly clear that the trial would proceed in either event. The Varcas declined the opportunity to represent themselves. Their motions[4] were denied and the trial proceeded.

■ The Varcas first contend that Lemann should have been disqualified because John Lawrence had represented Edward Misseck, a defendant in the companion Fink indictment and a witness against the Varcas.[5] This objection is devoid of merit. Early on Lemann candidly informed the court of his firm's relationship with Lawrence. That relationship was not a basis for disqualifying Lemann for it created no conflict of interest. While members and associates in one firm may not represent conflicting interests, practitioners who share office space and occasionally consult with one another are not regarded as constituting a single firm for conflict purposes. *See* Model Rules of Professional Conduct of the Louisiana State Bar Association 1.9 and 1.10, and parallel provisions in the ABA Model Rules of Professional Conduct. *Compare Mitchell v. Maggio*, 679 F.2d 77 (5th Cir.) *cert. denied*, 459 U.S. 912, 103 S.Ct. 222, 74 L.Ed.2d 176 (1982) (lawyers within one firm). Nor was a basis for disqualification created by the factual relationship which existed between Lemann and Lawrence as a consequence of discussions or exchange of information.

The court and the Varcas were aware of the Lawrence matter. Just prior to selecting Lemann the Varcas had had a *Garcia* hearing in which the issue of conflict-free counsel was explained. The Varcas wanted

---

**2.** At the time of the Varcas' trial, Deerman and Kinney were awaiting retrial on a superseding indictment. In their first trial, the jury had acquitted them on two counts, but had hung on the other two. *See United States v. Deerman,* 837 F.2d 684 (5th Cir.) *cert. denied,* — U.S. ——, 109 S.Ct. 146, 102 L.Ed.2d 118 (1988).

**3.** Mark Varca's son also wrote to the district judge complaining that the Varcas' counsel were concurrently representing Deerman and Kinney.

**4.** The Varcas also moved to dismiss their attorneys for providing ineffective assistance and to dismiss the indictment.

**5.** This objection relates only to Lemann. Reed had no professional relationship with Lawrence.

O'Connor to continue with his joint representation of them but declined to waive conflict-free counsel. The court disqualified O'Connor over their objections.

█ The Varcas' primary assertion is that the concurrent representation by Reed's partner and Lemann of the two Customs agents compromised their defense because their attorneys would not subpoena those agents in an attempt to prove that the smuggling had occurred without the Varcas' knowledge. They suggest that they only became aware of this conflict a few days before trial. They assert that the district court's failure to inquire into the conflict, conduct a *Garcia* hearing, or grant a continuance, constitutes clear error warranting reversal of their convictions.

We begin this analysis by noting that after a *Garcia* hearing and a full explanation of the right to conflict-free counsel, and the dangers inherent in being represented by an attorney laboring under a conflict, the Varcas selected Lemann and Reed. They did so, according to their statements to the court, after reading a transcript of the trial of the two Customs agents who were represented by Lemann and Reed's law partner.

Aware of the professional reputation of Lemann and Reed, the district court was not persuaded that these attorneys had willfully labored under an irreconcilable conflict of interest. Nor are we. These attorneys previously had asked to be relieved; the court had declined, deeming their reasons insufficient. If some development had occasioned a true conflict which warranted disqualification, it strains our credulity to believe that these attorneys would not cheerfully have brought this conflict to the court's attention and reurged their motion to withdraw.

We find even less credible the suggestion of the Varcas that this conflict reared its ugly head only on the eve of trial, as they began to explore a new line of defense. They would have this court accept the proposition that these two skilled and experienced criminal defense counsel, nine months after undertaking the responsibility for their representation and within days of

trial, first thought of, or worse yet, first had brought to their attention the "unique" defense that "my client did not do it, someone else did." We decline the invitation.

It was within the district court's discretion to deny this eleventh hour tactic which it viewed as nothing more than an effort to delay the trial. *See McCoy v. Cabana,* 794 F.2d 177 (5th Cir.1986) (denial of last minute request for continuance to retain new counsel is within court's discretion); *see also United States v. Punch,* 722 F.2d 146, 151 (5th Cir.1983) (recognizing that conflict of interest may be used as a delay tactic); *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) (same). *Cf.* Fed.R.Crim.P. 44(c) (*Garcia*-type hearings required only where counsel represents defendants jointly charged or joined for trial). We conclude that under all of these circumstances, the trial judge's decision to give the Varcas the option to proceed with their counsel or to proceed *pro se* was an appropriate exercise of his discretion.

## 2. *Pre- and Post–Indictment Delay*

█ The Varcas contend that the indictment against them should have been dismissed because of a two-year lapse between the date of the offense and the date of their indictment, and an eleven-month lapse between indictment and trial. The district court found the Varcas' motions to dismiss the indictment meritless. We agree. To support a claim of pre-indictment delay, a defendant must proffer more than a simple assertion of prejudice. He must also demonstrate that the delay was intended by the government to gain a tactical advantage. *United States v. Lovasco,* 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977); *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). There is no such showing in this record. Nor did the eleven months that elapsed between indictment and trial violate the Varcas' sixth amendment right to a speedy trial. Although such a delay merits scrutiny, we find that it was occasioned by the Varcas' need for additional time to retain conflict-free counsel, their delay in furnish-

ing discovery material to their attorneys, and their desire to discover and utilize classified information. At no time did the Varcas assert their right to a speedy trial. Under these circumstances, we perceive no constitutional violation. *See Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).

3. *Evidentiary Rulings Relating to Classified Information*

▇▇▇ Prior to trial the Varcas informed the government that they intended to use classified information which would show that they previously had worked for the CIA in a Caribbean intelligence operation through a contact named Rudolf. A search by the CIA of its records disclosed three classified reports mentioning the Varcas. The district court ruled that the reports were relevant, but ordered them disclosed in a redacted version eliminating Rudolf's last name and telephone number, and containing a more general, declassified summary of Rudolf's contacts with Anthony Varca in 1963 and 1980.

The Varcas contend that these rulings, made pursuant to the Classified Information Procedures Act (CIPA), 18 U.S.C.App., prevented their access to relevant evidence and curtailed their ability to mount their defense. The CIPA was not, however, intended to expand the traditional rules of criminal discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense. *See* Fed.R.Crim.P. 16; *United States v. Yunis*, 867 F.2d 617 (D.C.Cir. 1989). The information in these reports was already known to Anthony Varca, who was fully capable of explaining the way in which the redacted details might have aided his defense.[6] That explanation was not

forthcoming. The Varcas also object to the district court's refusal to permit testimony relating to their involvement in the CIA's operation in the Bay of Pigs. The court's ruling that this testimony was irrelevant was within its discretion. *See United States v. Wilson*, 732 F.2d 404 (5th Cir.), *cert. denied*, 469 U.S. 1099, 105 S.Ct. 609, 83 L.Ed.2d 718 (1984).[7] Such, in any event, would not constitute reversible error. *See* Fed.R.Crim.P. 52(a).

4. *Sufficiency of the Evidence*

▇▇▇ The Varcas challenge the sufficiency of the government's evidence on two grounds. They assert that the evidence was insufficient to support their conviction under Count Four because the government failed to prove that the boat carrying the marihuana was found within United States customs waters. They also claim that the testimony of the government's witnesses was not credible.

Neither assertion is persuasive. Testimony introduced at trial established that the marihuana boat navigated along the coast and into one of the channels of the Mississippi delta near New Orleans, thus providing a clear jurisdictional basis for the Varcas' conviction on Count Four. Furthermore, the credibility of the witnesses at trial is a matter peculiarly within the province of the jury. *United States v. Cervantes–Pacheco*, 826 F.2d 310 (5th Cir. 1987) (en banc), *cert. denied*, 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988).

5. *Minimum Eligibility for Parole*

▇▇▇ Finally, the Varcas assert that the district court erred in ordering, pursuant to 18 U.S.C. § 4205(b)(1), that they not be eligible for parole prior to serving 15 years of their 52-year sentences.[8] Although we

---

6. The redaction of these reports could not have prejudiced Mark Varca who was not mentioned in them.

7. The Varcas also object to the court's ruling that Anthony Varca could not testify as to his association with an entity known as "Black Eagle Associates" in the 1940's and 1950's. The court correctly ruled that no events prior to the 1960's could be addressed because proper notice

had not been given the government pursuant to § 5 of CIPA. *See United States v. Badia*, 827 F.2d 1458 (11th Cir.1987), *cert. denied.*, 485 U.S. 937, 108 S.Ct. 1115, 99 L.Ed.2d 275 (1988).

8. Although this statute was repealed as of November 1, 1987 by the Sentencing Reform Act of 1984, it remains applicable to crimes committed before that date.

have not previously addressed the issue directly,[9] we have stated that "Section 4205(b) permits the district courts to set that time [of parole eligibility] at any point during the first third of the prison sentence." *United States v. Pry*, 625 F.2d 689, 692 (5th Cir.1980), *cert. denied*, 450 U.S. 925, 101 S.Ct. 1379, 67 L.Ed.2d 355 (1981). We now so hold. We find no error in the district court's order.

The convictions are AFFIRMED.

---

9. The courts of appeals that have addressed this question are split. Four circuits have held that section 4205 does not authorize parole dates beyond ten years. *See United States v. Hagen*, 869 F.2d 277 (6th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 3228, 106 L.Ed.2d 576 (1989); *United States v. DiPasquale*, 859 F.2d 9 (3d Cir. 1988); *United States v. Castonguay*, 843 F.2d 51 (1st Cir.1988); *United States v. Fountain*, 840 F.2d 509 (7th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 533, 102 L.Ed.2d 564 (1988), while four circuits have held that district courts may set parole dates amounting to up to one-third of the total sentence. *United States v. Berry*, 839 F.2d 1487 (11th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 863, 102 L.Ed.2d 987 (1989); *United States v. Gwaltney*, 790 F.2d 1378 (9th Cir.1986), *cert. denied*, 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987); *Rothgeb v. United States*, 789 F.2d 647 (8th Cir.1986); *United States v. O'Driscoll*, 761 F.2d 589 (10th Cir.1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1207, 89 L.Ed.2d 320 (1986). We join this latter group.