937 F.2d 617
 Unpublished Disposition
NOTICE: Tenth Circuit Rule 36.3 states that unpublished opinions and orders and judgments have no precedential value and shall not be cited except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Rochelle LUCAS, Defendant-Appellant.
 No. 90-1156.
 United States Court of Appeals, Tenth Circuit.
 July 16, 1991.
 
 Before STEPHEN H. ANDERSON and EBEL, Circuit Judges, and SAFFELS, District Judge.*
 ORDER AND JUDGMENT**
 EBEL, Circuit Judge.
 
 
 1
 The defendant-appellant pled guilty to possessing with the intent to distribute in excess of 50 grams of crack cocaine. She reserved her right to appeal the issue of whether the district court erred when it denied her motion to suppress both her confession as well as the crack cocaine itself. We have reviewed the decision of the district court and have found it to be without error. Therefore, we AFFIRM.
 
 FACTS
 
 2
 On February 7, 1990, at approximately 11:00 P.M., two officers, assigned to monitor late-night outbound flights at Los Angeles International Airport, observed the defendant purchasing a one-way ticket from Los Angeles to Denver. The flight was to leave on February 8, the following morning. For a number of reasons, none of which are germane to the issues raised in this appeal, the officers' suspicions were aroused, and they notified officials at Denver's Stapleton Airport.
 
 
 3
 The next morning in Denver, two officers, Fetrow and Fortunato, watched for the defendant to deplane. After the defendant deplaned, the officers followed her towards the exit. The defendant walked past the baggage claim area toward the passenger drop-off area. The officers approached the defendant approximately forty to fifty feet in front of the exit door. They told her that they were narcotics officers and that they would like to talk to her for a few minutes. According to the officers, they made it clear to her that she was free to leave at any time. They asked her if they could search her purse and she agreed. Finally, they asked her if she would consent to a search of her person. Once again, she agreed. She followed the officers to the airport security offices. The officers introduced the defendant to a female officer who had agreed to search her. Just before the search was to begin, the defendant confessed to the female officer that she was carrying cocaine. The officers Mirandized her, and she was placed under arrest.
 
 
 4
 The defendant filed a motion to suppress her confession as well as the cocaine. The United States District Court for the District of Colorado held a hearing and denied her motion. The defendant agreed to plead guilty so long as she retained the right to appeal the district court's decision to deny her suppression motion. The district court accepted her guilty plea and sentenced her to a 151 month prison term. The defendant then appealed to this court.
 
 DISCUSSION
 
 5
 When reviewing on appeal the denial of a motion to suppress, we review the district court's findings of antecedent facts for clear error. United States v. Berryhill, 880 F.2d 275, 280 (10th Cir.1989), cert. denied, 110 S.Ct. 853 (1990). We review the district court's legal conclusions under the de novo standard. In re Ruti-Sweetwater, Inc., 836 F.2d 1263, 1266 (10th Cir.1988).
 
 
 6
 Police officers do not violate the Fourth Amendment by simply asking individuals whether they are willing to answer questions. United States v. Bell, 892 F.2d 959, 965 (10th Cir.1989), cert. denied, 110 S.Ct. 2618 (1990). The Fourth Amendment is not implicated when an officer asks an individual her permission to search her belongings or her clothing, so long as the officer makes it clear to the individual that she has no obligation to consent and is free to leave. Cf. id. (where the officers told the defendant that he did not need to consent to a search, the officers did not need probable cause or reasonable suspicion to ask the defendant his permission to search his bag or his jacket pockets).
 
 
 7
 The defendant admits that she voluntarily consented to the search of her purse. However, she claims that the officers did not explain to her that she was not obligated to consent to the search of her person. The officers, on the other hand, claim that they did indeed explain to the defendant that she had no obligation to consent to a search of her person. The district court made the following findings of fact:
 
 
 8
 The officers testified and the Court will find as fact that he made clear to Ms. Lucas that at this time she was not under arrest, that he understood that it was not a violation of the law to travel under an assumed name, and that she was free to leave at any time if she wished.
 
 
 9
 The officer asked if Ms. Lucas would permit a search of her purse, and she consented. Officer Fortunato did a cursory search of the person, returned it--of the purse and returned it to Ms. Lucas.
 
 
 10
 .............................................................
 
 
 11
 ...................
 
 
 12
 * * *
 
 
 13
 In any event they found nothing in the purse, but being still suspicious, Ms. Lucas was asked if a policewoman could search her, and was again told that she was--could refuse the search and free to go.
 
 
 14
 And was told that the search could be made in a private place. And Ms. Lucas consented.
 
 
 15
 Again up to this point in time, and at all times relevant, the evidence is really not in conflict whatsoever that the demeanor of the officers was not threatening, that there was not show of weapons; that all the officers, including Linda Piedra, were in plain clothes; that there were not threats made, there were not promises made, no inducements or show of force of any kind. There was no intonation in any of the individual voices that would be threatening.
 
 
 16
 Tr.Vol. II at 170-72. Therefore, if we find that the district court's factual findings were not clearly erroneous, we must, under Bell, reject her Fourth Amendment claim.
 
 
 17
 There is ample evidence in the record to support the district court's factual findings. Michael Fetrow, one of the two Denver police officers who first talked with the defendant, testified that the defendant was told on numerous occasions that she was not under arrest and that she was free to go. Id. at 34. Fetrow testified that when the defendant was asked for her permission to search her person, she was told "that she was free to go, and she said she understood and that was not a problem." Id. at 38. See also id. at 41 & 47. Officer Fortunato's testimony was in accord. See id. at 75. Although the defendant disagreed and testified that she was not told that she could refuse to have her person searched, see id. at 106, 107, 108, 117-18, 119, 125, 129, the district court was free to and apparently did reject her testimony. See United States v. Skowronski, 827 F.2d 1414, 1417 (10th Cir.1987). After carefully reviewing the record, we are unable to hold that the district court was clearly erroneous in making its factual finding that the defendant consented to the police officers' request that they be allowed to search her person. Therefore, we AFFIRM.
 
 CONCLUSION
 
 18
 We have reviewed each of the defendant's claims and have found each of them to be without merit. Therefore, the district court is AFFIRMED.
 
 
 
 *
 The Honorable Dale E. Saffels, United States District Judge for the District of Kansas, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3